# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL DICKERSON, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>BRP US, INC., BOMBARDIER RECREATIONAL PRODUCTS, INC. and BRP, INC.,<br><br>     Defendants. | Case No. |

## CLASS ACTION COMPLAINT
## AND JURY TRIAL DEMAND

Plaintiff Daniel Dickerson, individually and on behalf of all others similarly situated, files this Class Action Complaint, and alleges as follows:

## INTRODUCTION

1. The exhaust system installed in 2010 to 2016 Sea-Doo personal watercraft ("Class PWCs") suffer from a defect in material that causes, among other things, the Class PWCs' exhaust resonator to melt and the Class PWCs to take on water ("Exhaust Resonator Defect"). Although defects in material or workmanship are covered by Defendants' (1) Limited Warranty that purports to last 12 months and (2) Emission-Related Warranty that purports to last 30 months or 175 hours, whichever comes first, Defendants have failed to repair the Exhaust Resonator Defect under the applicable warranties.

2. Defendants are aware of the Exhaust Resonator Defect and know that consumers do not anticipate that the Class PWCs exhaust system has a component that will melt under

{00291597 }

normal use and result in the Class PWCs taking on water and sinking. Nevertheless, Defendants have not informed current owners about the Exhaust Resonator Defect, have not disclosed the Exhaust Resonator Defect to prospective purchasers, and continue to promote the Class PWCs as safe.

3.     The Class PWCs present a safety hazard and are unreasonably dangerous to consumers. When the exhaust resonator melts, water flows into the hull of the Class PWCs that results in the partial and/or complete sinking of the Class PWCs. Obviously, such a situation results in the Class PWC passengers to be stranded in whatever body of water they were operating in, and could even result in personal injury or death.

4.     In addition to these safety hazards, the cost to repair the Exhaust Resonator Defect can be exorbitant because consumers will be required to pay hundreds, if not thousands, of dollars to repair the damage to the exhaust system and any damage caused by the intake of water. Upon information and belief, the Exhaust Resonator Defect has even resulted in the total loss of some Class PWCs.

5.     On information and belief, Defendants knew or should have known that the Class PWCs and their exhaust systems are defective and not fit for their intended purpose of providing consumers with safe and reliable transportation. Nevertheless, Defendants have actively concealed and failed to disclose this defect to Plaintiff and the Class Members at the time of purchase or thereafter.

6.     Defendants knew and concealed the Exhaust Resonator Defect that is contained in every Class PWC, along with the attendant safety concerns and associated repair costs, from Plaintiff and Class Members both at the time of sale and repair and thereafter. Had Plaintiff and the Class Members known about these defects at the time of sale, Plaintiff and the Class

Members would not have purchased the Class PWCs or would have paid less for them.

7.      As a result of Defendants' practices, Plaintiff and the other members of the proposed Class, have suffered injury in fact, including economic damages, and have lost money or property. Plaintiff brings a claim for breach of express warranty, breach of implied warranty, violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, statutory fraud, and unjust enrichment.

## PARTIES

### Plaintiff Daniel Dickerson

8.      Plaintiff Daniel Dickerson is a New York citizen who resides in Rochester, New York.

9.      On or about June 29, 2016, Mr. Dickerson purchased two 2016 Sea-Doo GTX S155 PWCs from Filer's Powersports, an authorized Sea-Doo retailer in Macedon, New York. Mr. Dickerson purchased the PWCs primarily for his personal, family, or household purposes.

10.     On July 1, 2016, Mr. Dickerson was operating his PWCs for the first time.  While operating them, one of the PWCs sounded the high exhaust temperature warning.  Within minutes of this warning, Mr. Dickerson's PWC began to sink.

11.     Unbeknownst to Mr. Dickerson, the exhaust resonator on his PWC had melted and was taking on water.  This resulted in Mr. Dickerson's PWC sinking.

12.     Mr. Dickerson was ultimately able to retrieve his PWC and have it towed to Filer's Powersports.  The service technician inspected Mr. Dickerson's PWC and confirmed that the Exhaust Resonator Defect caused the resonator to melt, as demonstrated in the picture below:



13.     Despite his PWC having under 2 hours of use and still being under the Limited Warranty and Emission-Related Warranty, Mr. Dickerson was advised that the repairs would not be covered under warranty and he was quoted $3,512.97 to repair the PWC.

14.     Shortly thereafter, Mr. Dickerson wrote a letter to his dealer that described his experience with the Exhaust Resonator Defect and requested that it be repaired under warranty. That letter was forwarded to Defendants.

15.     On August 16, 2016, Defendants' employee emailed Mr. Dickerson and advised that it would not cover the repairs under warranty and refused to provide further assistance.

16.     Before Mr. Dickerson purchased the subject PWC, he consulted with Defendants' sales representatives and reviewed sales/marketing materials. However, at no time did the Defendants' dealer or any of the written materials on the subject PWC disclose to plaintiff that the Class PWCs suffer from the Exhaust Resonator Defect alleged herein. Had Defendants' disclosed the true nature of the Exhaust Resonator Defect alleged herein, Mr. Dickerson would not have purchased the PWC or would have paid less for it.

**Defendants**

17.     BRP US, Inc., is a corporation organized and in existence under the laws of the State of Delaware with its headquarters located in Sturtevant, Wisconsin. At all times relevant herein, BRP US, Inc. was engaged in the business of importing, marketing, distributing, warranting, servicing, repairing and selling PWCs in New York and throughout the United States of America.

18.     Bombardier Recreational Products, Inc., and BRP, Inc., are Canadian corporations with their corporate headquarters in Valcourt, Quebec, Canada.   BRP, Inc., owns 100% of Bombardier Recreational Products, Inc., which in turn owns 100% of BRP US, Inc.  Bombardier Recreational Products, Inc., and BRP, Inc., design, manufacture, warrant, sell, distribute, and market PWCs in New York and throughout the United States of America.

19.     BRP US, Inc., Bombardier Recreational Products, Inc., and BRP, Inc. (collectively referred to as "BRP"), operate as a single entity for the purposes of designing, manufacturing, importing, marketing, distributing, warranting, servicing, repairing and selling PWCs in New York and throughout the United States of America.

**JURISDICTION AND VENUE**

20.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  All conditions precedent to filing of this action, have been satisfied or waived.

21.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391, because Defendants are subject to personal jurisdiction in this district, have advertised in this district, and have received substantial revenue and profits from their sales of Class PWCs in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

22.     This Court has personal jurisdiction over Defendants because the specific conduct and acts giving rise to this litigation occurred in this district.  Moreover, Defendants have conducted substantial business in this judicial district, and intentionally and purposefully placed Class PWCs into the stream of commerce within the districts of New York and throughout the United States.

## FACTUAL ALLEGATIONS

23.     For years, Defendants have designed, manufactured, distributed, imported, warranted, marketed, advertised, serviced and sold, directly or indirectly through dealers and other retail outlets, thousands of Class PWCs throughout the United States.

24.     The Class PWCs come equipped with an exhaust system that includes an exhaust resonator.  The purpose of a resonator is to cancel out a certain range of sound frequencies.

25.     Plaintiff and Class Members are the intended purchasers of the Class PWCs and the intended beneficiaries of Defendants' warranties relating to the Class PWCs.

26.     Plaintiff and Class Members are retail consumers of Class PWCs, who purchased new Class PWCs at dealers authorized to distribute them in New York and throughout the United States of America. Plaintiff's and Class Members' Class PWCs have undergone proper registration by authorized dealers, which serve as local agents for Defendants, marketing and selling the Class PWCs and performing warranty repairs and services and processing warranty

requests for Defendants, relating to the Class PWCs.

27.   Defendants provide owners of the Class PWCs with a Limited Warranty. The

Limited Warranty states:

> Bombardier Recreational Products Inc. ("BRP")* warrants its model-year 2015
> Sea-Doo personal watercraft sold by authorized BRP Dealers (as defined below) in
> the United States of America ("USA") and in Canada from defects in material or
> workmanship for the period and under the conditions described below.
>
> This limited warranty will be in effect from (1) the date of delivery to the first
> retail consumer or (2) the date the product is first put into use, whichever occurs
> first and for the applicable period below:
>
> 1. TWELVE (12) CONSECUTIVE MONTHS for private use owners.
> 2. FOUR (4) CONSECUTIVE MONTHS for commercial use owners. [ ].
> 3. For emission-related components; please also refer to the US EPA
>    EMISSION RELATED WARRANTY contained herein.

28.   Defendants provide owners of the Class PWCs with an Emission-Related

Warranty. The Emission-Related Warranty states:

> Bombardier Recreational Products Inc. ("BRP")* warrants to the ultimate
> purchaser and each subsequent purchaser that this new engine, including all parts
> of its exhaust emission control system and its evaporative emission control
> system, meets two conditions:
>
> 1. It is designed, built, and equipped so it conforms at the time of sale to the
>    ultimate Purchaser with the requirements of 40 CFR 1045 and 40 CFR
>    1060.
> 2. It is free from defects in materials and workmanship that may keep it from
>    meeting the requirements of 40 CFR 1045 and 40 CFR 1060.
>
> Where a warrantable condition exists, BRP will repair or replace, as it elects, any
> part or component with a defect in materials or workmanship that would increase
> the engine's emissions of any regulated pollutant within the stated warranty
> period at no cost to the owner, including expenses related to diagnosing and
> repairing or replacing emission-related parts.

The Emission-Related Warranty is valid for components such as the exhaust system and the

exhaust resonator for 175 hours or 30 months, whichever occurs first.

29.   The Exhaust Resonator Defect causes the plastic resonator to melt and develop

holes, which in turn allow water to flood the hull of the Class PWCs.

30.     The Exhaust Resonator Defect is present in all Class PWCs.  In fact the subject resonator, part no. 274001366, is the exact same resonator that is used in every Class PWC.  This is confirmed by Defendants' online parts catalog[1] that provides the part numbers for every resonator used in the Class PWCs.  Accordingly, Plaintiff and every purchaser of a Class PWC has purchased the exact same defective resonator, regardless of what year or model Class PWC was purchased.

31.     The Exhaust Resonator Defect was present in the Class PWCs when they left the manufacturing facility.  Because the Exhaust Resonator Defect is caused by a defect in material, BRP is obligated to cover repairs to the exhaust system during the Limited Warranty and Emissions-Related Warranty periods. Defendants, however, refuse to repair consumers' PWCs under the applicable warranties, refuse to replace the parts free of charge, and refuse to publically acknowledge that the Exhaust Resonator Defect exists. Defendants' refusal to honor their warranties harms the Plaintiff and Class members by forcing them to incur out-of-pocket costs on covered repairs.

32.     Numerous consumer complaints concerning the Exhaust Resonator Defect in Class PWCs have been voiced on various internet forums as well as directly with BRP. These complaints reflect the abnormal and unexpected Exhaust Resonator Defect and BRP's refusal to honor its warranties, or to take responsibility for the Exhaust Resonator Defect. The complaints also demonstrate BRP's awareness of the defect and how potentially dangerous the defective condition is (note that spelling and grammar mistakes remain as found in the original):

07-20-14, 12:55 PM

---

[1] http://epc.brp.com/Index.aspx?lang=E&s1=5614a796-daec-4e6f-8134-7310fceddf42 (last visited April 4, 2018).

## sbaker217

 **GTI SE130 resonator melted!**

My Granddaughter was using my NEW (10hours) GTI SE130 when the intake was clogged by weeds. She got a high exhaust temp message but before she could take appropriate action the ski started to take on water and rapidly started to sink.
Thank God for three young people in a small boat that towed her back to the boat ramp. Upon lifting the ski from the water, we found that the plastic resonator had a two inch hole in the inlet. This was the cause of the ski taking on water.
We got the ski home and found that the engine had ingested water. We got the water out of the cylinders and I have changed the oil twice.
I still have three fault codes and an indicated ECM fault.
Has this thing happened to others out there and what do I do now? I can't believe that Sea Doo would put plastic components where they could do so much damage.
Looking for advice

This has turned my whole Sea Doo experience quite sour! 

07-20-14, 04:34 PM

## 2014GTI130SEDano

 **Same boat**

Well at least your unit had 10+ hours on it! I got my 2 machines to the lake and had 1 hour on one of them before it sank! it took 10 seconds from the time the flash of exhaust temp high coming on, switching to "Limp mode" and then back to normal (When the exhaust temp sensor melted)

our boat sank to the bottom of the lake and when we got it to shore we see the resonator had blown a hole, another exhaust hose (That ports on the actual can) had pulled right off the port rad hose still intact.

In addition the wear ring straps that hold it in place had blown off and had been sitting in the bottom of the hull

We pulled the boat to shore and when on the trailer checked to see if we had brought anything into the jet. (Nothing) even the dealer said they found nothing in the jet

BRP said that they would not honour warranty and insisted it was because I MUST have had the jet plugged and I would not be a manufacturers defect….

Took me 3 weeks of back and forth to tell them to simply fix it ($1400 CDN)

I feel your frustration and feel that the engine should have shut down to prevent the boat from sinking! poor design in my opinion

https://www.seadooforum.com/showthread.php?72598-GTI-SE130-resonator-melted!

06-23-2015, 12:22 PM

**tc1022**

**PWCToday Newbie**

| | |
|---|---|
| Join Date: | Jun 2015 |
| Location: | Florida |
| Posts: | 1 |

**Seadoo gtx 260 limited // hole in resonator..**

i was on a gtx 260 limited for a matter of minutes and the ski sunk with almost no warning. 5 beeps and the ski was 95% underwater in a very short period of time. (luckily we were in residential water channels & able to swim to safety.) this ski has very few hours and is still under warranty until 5/22/2016. The ski has been impeccably maintained. I contacted brp/sea-doo and they will not admit that there is problem. The resonator literally has a gapping hole in it. Sea-doo is claiming its "rider error" and because the unit over heated it blew a hole in the resonator. I have over 15 years experience with pwc's and i've never seen anything like this. Especially with such short notice. Literally total riding time was no more than 10 minutes and the ski went under. I can't understand how a personal watercraft which is made to float on water, can sink in such a short span of time. There should be some type of safety feature to prevent this from occurring.
Has anyone experienced something like this with the gtx model? I've found a couple other reviews from riders claiming the same thing ... Brp is insinuating that something was lodged in the ski... There definitely wasn't anything in there...that's jet ski 101-check if you "sucked" something up...when the ski got to the dealer the dealer also confirmed that nothing was lodged. Now brp won't cover the repairs...i must say the customer service department at sea-doo/brp really isn't the best.
Have a great day!! Looking forward to comments/suggestions.

http://www.pwctoday.com/showthread.php?t=447101

33.     The undisclosed Exhaust Resonator Defect poses an unreasonable safety risk to consumers.  These failures can occur without warning and result in the Class PWC sinking in the middle of a lake, ocean, or any large body of water, thereby stranding the riders, and exposing them to risk of drowning, hypothermia, exposure, injury from other watercraft, and a myriad of other dangers.

34.     Defendants have long known that the Class PWCs contain the Exhaust Resonator Defect. Defendants' have exclusive access to information about the defects through their dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other sources of aggregate information about the problem. In contrast, the Exhaust Resonator Defect was not known or reasonably discoverable by Plaintiff and Class members prior to purchase and without experiencing the defect first hand and exposing themselves to an unreasonable safety risk.

35.     Defendants have actively concealed the Exhaust Resonator Defect from consumers. Even when Class PWC owners specifically ask whether their PWC suffers from a known problem, Defendants' policy is to deny that there is a known problem, continue concealing the Exhaust Resonator Defect, and to assert that failure must have been caused by something that the owner did. Defendants knew that potential PWC buyers would deem the Exhaust Resonator Defect to be material such that reasonable consumers who knew of the defect either would have paid less for the Class PWCs or would not have purchased a Class PWC at all.

36.     Defendants owe a duty to disclose the Exhaust Resonator Defect and the associated repair costs to Class PWCs owners, among other reasons, because the defect poses an unreasonable safety hazard; because Defendants have exclusive knowledge or access to material facts about the Class PWCs and their exhaust systems that are not known or reasonably discoverable by Plaintiff and Class Members; and because Defendants have actively concealed the Exhaust Resonator Defect from its customers.

37.     As a result of Defendants' practices, Plaintiff and Class members purchased PWCs they otherwise would not have purchased, paid more for those PWCs than they would have paid, have incurred damage because the Exhaust Resonator Defect has diminished the value of the Class PWCs, were subjected to an unreasonable risk to their safety, and unnecessarily paid, and will continue to pay, repair costs as a result of the Exhaust Resonator Defect.

38.     To this day, upon information and belief, Defendants continues to conceal material information from users and consumers of the Class PWCs and the public that they are inherently and materially defective.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this lawsuit as a class action individually and on behalf of all

others similarly situated as members of the proposed Plaintiff Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).   This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

40.     The Class and Sub-Class are defined as:

Nationwide Class: All current and former owners any 2010 to 2016 Sea-Doo PWC.

New York Sub-Class: All Members of the Nationwide Class who purchased the subject PWCs in the state of New York.

41.     Excluded from the Class and Sub-Class are: (1) Defendants, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

42.     Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Members of the Class are readily identifiable from information and records in defendants' possession, custody, or control, as well as from records kept by regulatory authorities.

43.     Typicality: Plaintiff's claims are typical of the claims of the Class in that the Plaintiff, like all Class Members, purchased a Class PWC that contained the Exhaust Resonator Defect. Plaintiff, like all Class Members, has been damaged by Defendants' misconduct in that

he purchased a PWC that is worth less than it was purchased for due to the concealed defect. Plaintiff has also incurred the cost of repairing the Exhaust Resonator Defect. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of deliberate, fraudulent, misconduct resulting in injury to all Class Members.

44.     <u>Commonality</u>: There are numerous questions of law or fact common to Plaintiff and the Class that predominate over any questions affecting only individual Class Members. These common legal and factual issues include the following:

      a.  Whether the Class PWCs and their exhaust systems contain defects in material and/or workmanship;

      b.  Whether the fact that the Class PWCs suffer from the Exhaust Resonator Defect would be considered material by a reasonable consumer;

      c.  Whether as a result of Defendants' concealment or failure to disclose material facts, Plaintiff and Class Members acted to their detriment by purchasing the Class PWCs;

      d.  Whether Defendants were aware of the Exhaust Resonator Defect;

      e.  Whether the Exhaust Resonator Defect constitutes an unreasonable safety risk;

      f.  Whether Defendants have a duty to disclose the defective nature of the Class PWCs and Exhaust Resonator Defect to Plaintiff and the other Class Members;

      g.  Whether Plaintiff and the other Class Members are entitled to a declaration as to their rights under the Limited Warranty and Emission-Related Warranty;

      h.  Whether Plaintiff and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

      i.  Whether Defendants violated the consumer protection statute of New York when it sold to consumers Class PWCs that suffered from Exhaust Resonator Defect.

45.     <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions. Plaintiff has no interests that conflict with other Class Members and Plaintiff intends to prosecute this action vigorously.

46.   <u>Predominance and Superiority</u>: Plaintiff and the other Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## VIOLATIONS ALLEGED

### COUNT I
### BREACH OF EXPRESS WARRANTY
#### (On Behalf of the Nationwide Class or,
#### alternatively, the New York Sub-Class)

47.   Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

48.   Through their Limited Warranty and Emissions-Related Warranty, Defendants agreed to provide an express written warranty directly to Plaintiff and Class Members, warranting to them that Defendants would repair and/or replace defects in material and/or workmanship free of charge that occurred during the applicable warranty periods.

49.   Defendants breached the Limited Warranty and Emissions-Related Warranty by failing to repair and/or replace Plaintiff's and other Class Members' defective exhaust systems

when a proper and timely warranty claim was submitted.

50.     Prior to the filing of this action, Defendants have had ample notice of the Exhaust Resonator Defect. Defendants have been aware of repeated consumer complaints and repair requests, including, but not limited to Plaintiff's, concerning the Exhaust Resonator Defect in the Class PWCs.

51.     Defendants have known of the Exhaust Resonator Defect at least as early as 2010 and continue to have knowledge of the defect and breaches of the express warranties, yet have intentionally failed to notify Plaintiff and members of the Class.

52.     As a result of the Defendants' actions, Plaintiff and Class Members have suffered economic damages including but not limited to costly repairs, loss of PWC use, substantial loss in value and resale value of the PWCs, and other related damage.

53.     Defendants' breach of these express warranties caused damages to Plaintiff and Class Members.

54.     Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitations and exclusions are unenforceable because they knowingly sold a defective product without informing consumers about the defect.

55.     The terms of the applicable warranties are also unconscionable and inadequate to protect Plaintiff and members of the Class. Among other things, Plaintiff and Class Members had no meaningful choice in determining these limitations and exclusions, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Class Members, and Defendants knew or should have known that the Class PWCs were defective at the time of sale and would fail under normal use.

56.     Plaintiff and Class Members have complied with all obligations under the Limited Warranty and Emissions-Related Warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

### COUNT II
### BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON MOSS WARRANTY ACT, 15 U.S.C. § 2301 *ET SEQ.*
### (On Behalf of the Nationwide Class or,
### alternatively, the New York Sub-Class)

57.     Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

58.     Plaintiff and the other Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

59.     Defendants are "suppliers" and "warrantors" within the meaning of sections 2301(4)-(5).

60.     The Class PWCs are "consumer products" within the meaning of section 2301(1).

61.     Defendants' express Limited Warranty and Emissions-Related Warranty is a "written warranty" within the meaning of section 2301(6).

62.     Defendants breached the express warranties by:

    i.   Extending warranties to Plaintiff and Class Members with their purchases of the Class PWCs, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner, but then refusing to repair or replace the Exhaust Resonator Defect;

    ii.  Selling Class PWCs to Plaintiff and Class Members with exhaust systems that were defective in material and workmanship, requiring repair or replacement within the warranty periods; and

      iii.   Refusing to honor the express Limited Warranty and Emissions-Related Warranty provided to Plaintiff and Class Members by repairing or replacing, free of charge, the exhaust system or any of its component parts, including exhaust resonator, and instead charging for repair and replacement parts.

63.    Defendants' breach of the express Limited Warranty and Emissions-Related Warranty has deprived the Plaintiff and the other Class Members of the benefit of their bargain.

64.    The amount in controversy of the Plaintiff's individual claims exceed the sum or value of $25. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit as there are there are hundreds, if not thousands, of putative class members

65.    Defendants have been afforded a reasonable opportunity to cure the breaches of written warranties, including when Plaintiff and other Class Members brought their Class PWCs in for diagnoses and repair of the Exhaust Resonator Defect.

66.    As a direct and proximate cause of Defendants' breach of written warranties, Plaintiff and Class Members sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiff and class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

**COUNT III**
**BREACH OF THE IMPLIED**
**WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Nationwide Class or,**
**alternatively, the New York Sub-Class)**

67.    Plaintiff and the Classes incorporate by reference each preceding and succeeding

paragraph as though fully set forth at length herein.

68.     Defendants are a "merchants" as defined under the Uniform Commercial Code ("UCC") § 2-104(1). *See* § 672.104(1), Fla. Stat.; N.Y. U.C.C. § 2-104(1).

69.     The Class PWCs and their exhaust systems are "goods" as defined under the UCC § 2-105(1). *See* § 672.105(1), Fla. Stat.; N.Y. U.C.C. § 2-105(1).

70.     Defendants were in privity with Plaintiff and Class Members. Plaintiff and Class Members were the foreseeable and intended users of the Class PWCs and beneficiaries of Defendants' warranties relating to them.

71.     Defendants impliedly warranted that the Class PWCs and their exhaust systems were of a merchantable quality. *See* UCC § 2-314; § 672.314, Fla. Stat.; N.Y. U.C.C. § 2-314.

72.     Defendants breached the implied warranty of merchantability, as the Class PWCs were not of a merchantable quality due to the Exhaust Resonator Defect, and the associated problems caused by this defect.

73.     As a direct and proximate result of the breach of said warranties, Plaintiff and class members were injured, and are entitled to damages.

74.     Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

**COUNT IV**
**Violations of the New York Consumer Protection Act ("NYCPA")**
**N.Y. Gen. Bus. Law § 349**
**(On behalf of the New York Sub-Class)**

75.     Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

76.     Plaintiff brings this count on behalf of himself and members of the New York

Sub-Class.

77.     Plaintiff and members of the New York Sub-Class are permitted to bring this action for injunctive relief and actual damages under the NYCPA.  *See* N.Y. Gen. Bus. Law § 349(h).

78.     Defendants are engaged in the conduct of "business, trade or commerce" within the meaning of the NYCPA.  *See* N.Y. Gen. Bus. Law § 349(a).

79.     The NYCPA prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  *See* N.Y. Gen. Bus. Law § 349(a).

80.     Defendants violated the NYCPA by engaging in deceptive acts or practices directed to consumers in connection with the sale of the Class PWCs.

81.     Defendants knowingly concealed, suppressed and/or omitted material facts regarding the defective exhaust system and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class PWCs, which directly caused harm to Plaintiff and members of the New York Sub-Class.  Plaintiff and members of the New York Sub-Class could not reasonably have known about the Exhaust Resonator Defect and its corresponding safety risk as the information was in the superior and exclusive control of Defendants.

82.     Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Exhaust Resonator Defect with the intent to mislead Plaintiff and members of the New York Sub-Class.  Defendants knew, or should have known, that the Exhaust Resonator Defect was a latent defect and would not be discovered until after purchase, and even when discovered, it would not be covered under warranty.  Defendants also knew, or should have known, that the Exhaust Resonator Defect in the Class PWCs could cause catastrophic failure leading to a loss of engine power while the PWC was operating.

Further, Defendants knew, or should have known, that the Class PWCs could sink, putting operators, passengers, and other individuals at risk for injury.

83.     Defendants owed a duty to disclose the Exhaust Resonator Defect and its corresponding safety risk to Plaintiff and members of the New York Sub-Class because they possessed superior and exclusive knowledge regarding the defect and the risks associated with the defect.  Rather than disclose the defect, Defendants engaged in deceptive acts or practices in order to sell additional Class PWCs and wrongfully transfer the cost of repair or replacement of the Exhaust Resonator Defect to Plaintiff and members of the New York Sub-Class.

84.     Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Exhaust Resonator Defect were intended to mislead consumers, were misleading to reasonable consumers, and misled Plaintiff and members of the New York Sub-Class.

85.     At all relevant times, Defendants' deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Exhaust Resonator Defect and its corresponding safety risk were material to Plaintiff and members of the New York Sub-Class. When Plaintiff and members of the New York Sub-Class purchased their Class PWCs, they reasonably relied on the reasonable expectation that the Class PWCs exhaust systems were free from latent defects and if a defect in material or workmanship manifested during the warranty period it would be repaired free of charge.  Had Defendants disclosed that the exhaust system was prone to premature failure and/or an unavoidable safety risk, Plaintiff and members of the New York Sub-Class would not have purchased the Class PWCs, or would have paid less for them.

86.     Defendants had a continuous duty to Plaintiff and members of the New York Sub-

Class to refrain from unfair and deceptive practices under the NYCPA and to disclose the Exhaust Resonator Defect.   Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Exhaust Resonator Defect and corresponding safety risk are substantially injurious to consumers.   As a result of Defendants' knowing, intentional concealment, suppression and/or omission of the Exhaust Resonator Defect in violation of the NYCPA, Plaintiff and members of the New York Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the exhaust system and/or actual damages in the amount of the cost to repair the Exhaust Resonator Defect, and damages to be determined at trial.   Owners and lessees of Class PWCs also suffered an ascertainable loss in the form of the diminished value of their PWCs as a result of Defendants' deceptive acts or practices in the course of their business.

87.   Defendants' deceptive acts or practices occurred in the conduct of business, trade or commerce.

88.   Defendants have knowingly and willfully engaged in the deceptive acts or practices alleged herein.   Further, Defendants unconscionably marketed the Class PWCs to uninformed consumers in order to maximize profits by selling additional Class PWCs containing the undisclosed latent defect and corresponding safety risk.

89.   Defendants' deceptive acts or practices affect the public interest and present a continuing safety risk to Plaintiff and members of the New York Sub-Class as well as the public.

90.    As a direct and proximate result of Defendants' violations of the NYCPA, Plaintiff and members of the New York Sub-Class have suffered actual damages and/or injury in fact.

91.   As a result of Defendants' unlawful conduct, Plaintiff and members of the New

York Sub-Class are entitled to actual damages, treble damages, costs of litigation, attorneys' fees, injunctive and other equitable relief. *See* N.Y. Gen. Bus. Law § 349(h).

**COUNT V**
**BREACH OF THE DUTY OF GOOD FAITH**
**AND FAIR DEALING**
**(On Behalf of the Nationwide Class or,**
**alternatively, the New York Sub-Class)**

92.    Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

93.    For every contract, the common law implies a covenant of good faith and fair dealing between parties in performing and enforcing their contractual duties. *See* Restatement (2d) of Contracts §205 (1981).  Under this covenant, each party to a contract has a duty to refrain from doing anything to unfairly interfere with the rights of any other party to receive the intended benefits of the contract. *Id*. Good faith and fair dealing includes the duty to exercise one's discretion in carrying out the contract in good faith and duty to act in a commercially reasonable manner.

94.    Through selling and warranting PWCs to Plaintiff and Class Members, Defendants have entered contracts with them.  Each of these contracts contains an implied covenant of good faith and fair dealing.

95.    In carrying out their contracts with Plaintiff and Class Members, Defendants failed to act in good faith or in a commercially unreasonable manner, denying Plaintiff and Class Members some benefit of the bargain originally intended by the parties by, *inter alia*, failing to notify Plaintiff and Class Members of the Exhaust Resonator Defect in the Class PWCs, misrepresenting the cause of the Exhaust Resonator Defect when the Class PWCs presented to authorized dealerships for repairs, misrepresenting the scope of the applicable warranties and

failing to fully and properly repair this defect under warranty.

96.      Through the foregoing, Defendants breached the covenant of good faith and fair dealing, thereby causing Plaintiff and Class Members injuries in an amount to be determined at trial.

**COUNT VI**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class or,**
**alternatively, the New York Sub-Class)**

97.      Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph, with the exception of those paragraphs addressing the written warranties, as though fully set forth at length herein.

98.      This cause of action is brought <u>in the alternative</u>, and will only be pursued if it is determined that no valid contracts and/or warranties exist between the Class and Defendants.

99.      As a direct and proximate result of Defendants' failure to disclose known defects and material misrepresentations regarding known defects in the Class PWCs, Plaintiff and Class Members have incurred substantial costs to repair the Class PWCs, which requires the replacement of the defective parts with replacement defective parts also sold by Defendants. As a result of having to prematurely purchase these replacement parts as a result the Exhaust Resonator Defect, Plaintiff and Class Members have conferred an unjust substantial benefit upon Defendants.

100.     Moreover, as a direct and proximate result of Defendants' failure to disclose known defects and material misrepresentations regarding known defects in the Class PWCs, Defendants have profited to the extent that Plaintiff and Class Members purchased Defendants' PWCs, purchased certified parts directly from the Defendants to repair the defects, and had to pay for repairs out of their own pocket that should have been covered under the applicable

warranties.

101.    Defendants have therefore been unjustly enriched due to the known defects in the Class PWCs through the use of funds that earned interest or otherwise added to Defendants' profits when said money should have remained with Plaintiff and Class Members.

102.    As a result of the Defendants' unjust enrichment, Plaintiff and Class Members have suffered damages.

**COUNT VII**
**DECLARATORY JUDGMENT**
**(On Behalf of the Nationwide Class or,**
**alternatively, the New York Sub-Class)**

103.    Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

104.    Defendants interpret and apply its Limited Warranty and Emissions-Related Warranty to exclude coverage for damages caused by the Exhaust Resonator Defect.

105.    Plaintiff contends that these warranties cover defects in material and workmanship, such as the Exhaust Resonator Defect, an interpretation driven by the plain language of the warranties.

106.    Plaintiff, on behalf of himself and the Class, requests a declaration as to the parties' respective rights of the Limited Warranty and Emissions-Related Warranty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully requests that this Court:

a.      enter an order certifying the proposed Class and/or Sub-Class, designating Plaintiff as named representative of the Classes, and designating the undersigned as Class Counsel;

b.      declare that Defendants are financially responsible for notifying all Class Members about the Limited Warranty and Emissions-Related Warranty;

c.      enter an order enjoining Defendants (i) from further deceptive marketing, warranting and sales practices with respect to Class PWCs, and (ii) to remove and replace Plaintiff and Class Members' exhaust systems with a suitable alternative product;

d.      award to Plaintiff and the Class compensatory, exemplary, statutory damages, treble and punitive damages, including interest, in an amount to be proven at trial;

e.      award any and all remedies provided pursuant to the NYCLA;

f.      declare that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Class PWCs, the repairs made to Class PWCs and the sale of replacement parts, or make full restitution to Plaintiff and Class Members;

g.      enter a declaration regarding the rights under the Limited Warranty and Emissions-Related Warranty;

h.      award of attorneys' fees and costs, as allowed by law;

i.      award of pre-judgment and post-judgment interest, as provided by law;

j.      grant leave to amend the Complaint to conform to the evidence produced during discovery and at trial; and

k.      such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.


Dated: April 3, 2018                    Respectfully submitted,

                                        */s/ D. Greg Blankinship*
                                        D. Greg Blankinship
                                        Andrew C. White
                                        gblankinship@fbfglaw.com
                                        awhite@fbfglaw.com
                                        **FINKELSTEIN, BLANKINSHIP,**
                                        **FREI-PEARSON & GARBER, LLP**
                                        445 Hamilton Ave., Suite 605
                                        White Plains, New York 10601
                                        Tel: (914) 298-3281
                                        Fax: (914) 824-1561

                                        Matthew R. Mendelsohn (*pro hac vice* forthcoming)
                                        mmendelsohn@mskf.net
                                        **MAZIE SLATER KATZ & FREEMAN, LLC**
                                        103 Eisenhower Parkway
                                        Roseland, NJ 07068
                                        Tel: (973) 228-9898
                                        Fax: (973) 228-0303

                                        *Attorneys for Plaintiff and Putative Class*